**Continental Distributing Co., Inc., a Corporation, Plaintiff-Appellant, v. Harry Keller, Defendant-Appellee.**

**Gen. No. M–51,980.**

First District, First Division.

January 15, 1968.

Rudnick & Wolfe, of Chicago (Lester D. Foreman and Paul D. Rudnick, of counsel), for appellant.

Morris A. Gzesh, of Chicago, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Plaintiff appeals from an order which struck plaintiff's amended complaint and dismissed the action. Plaintiff, a wholesale liquor dealer, sued defendant on a guaranty by which defendant guaranteed payment of liquor purchases by a retailer. The trial court found the guaranty was void because it violated the Illinois Liquor Control Act (Ill Rev Stats, c 43).

The amended complaint alleges that plaintiff, a wholesale liquor "distributor," would not extend open account credit to the "Blue Flame Lounge, Inc.," a "retailer"; that defendant, Harry Keller, in order to induce plaintiff to sell the lounge on a "thirty-day open account basis," executed on August 14, 1961, his written guaranty, wherein he unconditionally guaranteed "at all times the payment when due for any purchases heretofore made or which may hereafter be made from Continental Distributing Co., Inc. by Blue Flame Lounge, Inc., . . . to the extent of $1,000.00"; that on February 5, 1963, plaintiff sold to the lounge merchandise in the sum of $580.62, which the lounge used and failed to pay for; that a judgment obtained by plaintiff against the lounge is uncollectible, and defendant Keller has refused to pay the $580.62.

Defendant's motion to strike the amended complaint and to dismiss the action basically alleged that the agreement was "unlimited as to time as to any open account sales" and "is illegal being against public policy such purported agreement stimulating the extension of merchandising credit to a retailer where not warranted . . . ; further, such purported agreement circumvents and violates Illinois Revised Statutes, 1965, chapter 43, section 122."

 The Liquor Control Act was passed for the regulation of the liquor trade, for the purpose of fostering and promoting sound and careful manufacture, sale and distribution of alcoholic liquors, in order to foster temperance in the consumption of such liquors, in the interest of the

protection of health, welfare and safety of the people (25 ILP, Liquor, § 14). Section 94 of the Liquor Control Act provides:

"This Act shall be liberally construed, to the end that the health, safety and welfare of the People of the State of Illinois shall be protected and temperance in the consumption of alcoholic liquors shall be fostered and promoted by sound and careful control and regulation of the manufacture, sale and distribution of alcoholic liquors."

Section 122 of the Act provides as follows:

"122. Receiving money or credit from manufacturer or distributor—Report of delinquent retail licensees —Cure of delinquency—Revocation of license.] § 4. It is unlawful for any person having a retailer's license or any officer, associate, member, representative or agent of such licensee to accept, receive or borrow money, or anything else of value, or accept or receive credit (other than merchandising credit in the ordinary course of business for a period not to exceed 30 days) directly or indirectly from any manufacturer, importing distributor or distributor of alcoholic liquor, or from any person connected with or in any way representing, or from any member of the family of, such manufacturer, importing distributor, distributor or wholesaler, or from any stockholders in any corporation engaged in manufacturing, distributing or wholesaling of such liquor, or from any officer, manager, agent or representative of said manufacturer. It is unlawful for any manufacturer or distributor or importing distributor to give or lend money or anything of value, or otherwise loan or extend credit (except such merchandising credit) directly or indirectly to any retail licensee or to the manager, representative, agent, officer or director of such licensee. . . .

"No right of action shall exist for the collection of any claim based upon credit extended to a distributor, importing distributor or retail licensee contrary to the provisions of this Section."

In considering section 122, in Weisberg v. Taylor, 409 Ill 384, 100 NE2d 748 (1951), it is said (p 387):

"[I]t is now well recognized, that the State may, in curbing intended evils, impose regulations on the liquor traffic more stringent than would be permitted or allowable in other businesses. . . . Our first inquiry, therefore, is whether or not the imposition of credit restrictions has any relationship to the public health, safety, or welfare within the police powers of the State."

And on page 388:

"The evils of the 'tied house' have long been recognized and most, if not all, of the States, including our own, have prohibited the furnishing by manufacturers or distributors of buildings, bars, equipment, or loans of money to a retailer. The restriction or curbing of credit by legislative enactment is but a logical extension of these prohibitions and is directly connected with the evils long recognized in the 'tied house.' Moreover, few people, if any, would deny that the restriction of credit reduces the power to buy and a reduction in the power to buy reduces the volume of sales. Credit restrictions on a nationwide basis are inaugurated on the theory that they will ultimately reduce sales and the consumption of goods. . . . It is, therefore, our considered opinion that the credit relations here imposed do have a direct connection and relationship to the protection of the public health, safety and welfare."

Defendant argues that restrictions on liquor trade being in the interest of good government should not be

153

relaxed or frittered away, and that plaintiff's position calls for a strict construction of the statute to serve the private ends of the plaintiff rather than serve the purpose of the statute.

Defendant asserts, "Plaintiff has not by its amended complaint set forth any allegation which overcomes the basic obstacle that the statute does not permit such a guaranty under any circumstances irrespective of whether, at the time a purported guaranty is given by an individual to a distributor, open account credit to a retailer is or is not justified. . . . Certainly, the health, safety and welfare of the People of the State of Illinois are not protected and temperance in the consumption of alcoholic liquors is not fostered and promoted by the extension of merchandising credit to an unstable retailer where not warranted."

Plaintiff argues, "The sale of a commodity on a thirty-day open account basis and a collateral agreement of guaranty by which both parties to the sales transaction benefit must be kept separate and apart. . . . Had the guaranty been limited to a thirty-day period, presumably no arguable violation of the Statute would be presented; but its continuing nature beyond the thirty-day period is not in violation of Section 122, because it is not an extension of credit or loan which are the only transactions prohibited. . . . A continuing guaranty was employed merely as a matter of convenience to both parties. That continuing guaranty, however, was in substance and effect equivalent to a series of individual guaranties coextensive with each extension of credit to which it applied."

■■ Neither plaintiff nor defendant has cited any authority which we consider to be determinative of the issue here. Although the guaranty shows that it was intended to effect the extension of credit to the lounge, it was neither a loan of money nor an extension of credit. It was

a contract by which the defendant obligated himself for the performance of an obligation by a third person (the lounge) in the event that the third person failed to perform, and it was not a primary obligation (20 ILP, Guaranty, § 2). Its continuing nature in no way impinged upon, circumvented or extended the 30-day credit period permitted by the statute. It is our opinion that it does not violate the statute when used to collect an account upon which credit was extended to a retail licensee in accordance with the provisions of section 122. If, on a trial, the evidence shows that the guaranty was used to circumvent the statute, the provisions of section 122 are sufficient to bar plaintiff's alleged right of action.

■ The use of the corporate form by a retailer is not prohibited by the Liquor Control Act. If the corporate form is used as a shell to avoid the responsibilities of the Act, we believe the legislature can easily stop the practice. If guaranties of payment of distributor-retailer accounts were intended to be prohibited by section 122 as a credit restriction, we believe the legislature would have so stated, irrespective of the period of credit time restriction.

For the reasons given, the order striking the amended complaint and dismissing the action with prejudice is reversed, and the cause is remanded for further proceedings consistent with the views herein.

Reversed and remanded with directions.

BURMAN, P. J. and ADESKO, J., concur.